USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/22/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                             :

UNITED STATES OF AMERICA,           :

           -v-                               :          1:18-cv-7285-GHW
                                             :          1:15-cr-321-GHW

RAMIREZ DEAZA-ALCALA,            :

                                           :       MEMORANDUM OPINION
                           Defendant.    :             AND ORDER
                                             :
-----------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

### I.    INTRODUCTION

Ramirez Deaza-Alcala participated in a conspiracy to distribute more than one kilogram of heroin. He pleaded guilty to that offense pursuant to a plea agreement and was sentenced principally to 132 months imprisonment—36 months below the advisory guidelines range agreed to by him in his plea agreement with the United States. In this petition under 28 U.S.C. § 2255, Mr. Deaza-Alcala argues, among other things, that his counsel was ineffective because his counsel failed to conduct a chemical examination of the narcotics that Mr. Deaza-Alcala distributed, and because his counsel allegedly failed to argue for a downward variance under 18 U.S.C. § 3553(a). Because the decision by Mr. Deaza-Alcala's counsel to comply with the terms of Mr. Deaza-Alcala's plea agreement at sentencing was not unreasonable, and because his remaining arguments lack merit, Mr. Deaza-Alcala's petition is denied.

### II.    BACKGROUND AND PROCEDURAL POSTURE

#### a.  Mr. Deaza-Alcala's Plea and Sentencing

On September 28, 2016, Mr. Deaza-Alcala pleaded guilty to the offense of conspiracy to distribute and possess with intent to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin. Mr. Deaza-Alcala entered that plea in accordance with

the terms of a plea agreement with the United States that he had entered into on that day. The Court engaged in a fulsome colloquy with the defendant to confirm his understanding of the terms of the plea agreement. Plea Transcript, Dkt. No. 434-2 ("Plea Transcript"), at 21-25.

The plea agreement recited the statutory maximum penalty associated with the offense to which the defendant was pleading guilty (life), as well as the mandatory minimum 10-year sentence applicable to the offense. Plea Agreement, Dkt. No. 434-1, at 1. In the plea agreement, the parties stipulated to the calculation of the advisory sentencing guidelines range. In calculating the agreed-upon sentencing guidelines range of 168-210 months of incarceration, the parties agreed, among other things, the following:

> . . . Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(1), *because the offense involved at least 90 kilograms of heroin*, the base offense level is 38.

Plea Agreement, Dkt. No. 434-1, at 2 (emphasis added).

The parties agreed to abide by the calculation of the advisory sentencing guidelines range contained in the Plea Agreement. In particular, the Plea Agreement provided that

> The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

Plea Agreement at 3. However, the parties expressly reserved the right to argue for a variance at sentencing pursuant to 18 U.S.C. § 3553(a). *Id.*

During the plea colloquy, the Court confirmed that the defendant understood the terms of the plea agreement. Plea Transcript at 21-25. The Court also informed the defendant that the agreement was binding on him and on the government. *Id.* The Court specifically reviewed the provisions of the agreement in which the defendant had waived his right to seek collateral review of his conviction and sentence under 28 U.S.C. § 2255, provided that his sentence fell within or below

the stipulated guidelines range of 168-210 months imprisonment.  *Id.* at 23; *see also* Plea Agreement at 4.

During his plea colloquy, Mr. Deaza-Alcala repeatedly acknowledged under oath that he had distributed heroin in an amount in excess of one kilogram, as set forth in these excerpts from his allocution:

> DEAZA-ALCALA:  From 2014 and 2015, I agreed with other persons to possess heroin.  To be specific, I made heroin deliveries to other people as I had been instructed to do.  I also lived in and took care of a house that was being used to store drugs and money.  I knew that my actions were illegal.  I'm sorry, your Honor.
>
> . . . .
>
> THE COURT:  Let me turn back to you, Mr. Deaza-Alcala.  What can you tell me regarding the quantity of heroin.
>
> DEAZA-ALCALA:  Do you want the exact amount?
>
> THE COURT:  Thank you.  The government is asking whether the amount exceeded one kilogram.
>
> DEAZA-ALCALA:  More than one.
>
> THE COURT:  More than one kilogram of heroin.  Is that correct?
>
> DEAZA-ALCALA:  It is correct.

Plea Transcript at 25-26.

The Court sentenced Mr. Deaza-Alcala on January 31, 2017.  The Court confirmed with Mr. Deaza-Alcala that the presentence report had been translated for him and inquired if he had discussed it with his counsel.  The Court adopted the factual matters set forth in the presentence report without objection by the parties.  Sentencing Transcript, Dkt. No. 434-3 ("Sentencing Transcript"), at 3-7.  Consistent with the parties' plea agreement, the presentence report stated that Mr. Deaza-Alcala had conspired to distribute and possess with intent to distribute more than 90 kilograms of heroin.  The presentence report also described Mr. Deaza-Alcala's role in the conspiracy—in particular that he made deliveries for the drug trafficking organization and lived at

the stash house used by the conspiracy. Counsel for Mr. Deaza-Alcala raised no objections to the presentence report.

During the sentencing proceeding, counsel for Mr. Deaza-Alcala made "numerous arguments in support of leniency . . . ." *Id.* at 10. Mr. Deaza-Alcala's counsel specifically argued that

> the Court's task this morning is to select from that range, from the range of the most sever reasonable sentence to the lowest reasonable sentence. The Court's task is to accord this defendant the lowest one, because that is the sentence that is reasonable and sufficient to comply with 3553, but not greater than necessary.

*Id.* In presenting this argument to the Court under 18 U.S.C. § 3553(a), counsel for the defendant specifically argued that a lesser sentence would be appropriate for him in light of the limited nature of his involvement in the conspiracy relative to his co-conspirators. *See, e.g., id.* at 10-11 ("the Court might want to look at a defendant who could accurately be described as a perfect pawn for the co-conspirators to use. Someone whose role should not be overstated.")

At sentencing, the Court calculated the guidelines range in a manner consistent with the parties' plea agreement and the presentence report. Among other things, the Court found that the base offense level was 38 because the offense involved more than 90 kilograms of heroin. Sentencing Transcript at 8-9. Neither party objected to the Court's sentencing guidelines calculation.

The Court articulated on the record a detailed evaluation of the sentencing factors set forth in 18 U.S.C. § 3553(a). The Court expressly considered the culpability of Mr. Deaza-Alcala relative to the other members of the conspiracy. Sentencing Transcript at 26-27; 30. The Court stated on the record that one of the bases for its decision to impose a sentence below the parties' stipulated guidelines range was fact that Mr. Deaza-Alcala acted at "the direction of . . . a more senior member of the conspiracy." *Id.* at 30. Ultimately, the Court sentenced Mr. Deaza-Alcala principally to 132 months of imprisonment—the statutory mandatory minimum sentence, and 36 months less than the

bottom end of the guidelines range calculated by the parties, the probation department, and the Court. *Id.* at 19-25.

Mr. Deaza-Alcala filed an untimely appeal. The Second Circuit Court of Appeals dismissed that appeal on August 31, 2018. *See* Dkt. No. 427.

### b. Mr. Deaza-Alcala's Petition

Mr. Deaza-Alcala filed this petition to vacate his sentence on August 7, 2018. Petition, Dkt. No. 425. Construed in the light most favorable to Mr. Deaza-Alcala, his petition claims that he is entitled to relief under 28 U.S.C. § 2255 because he was provided ineffective assistance of counsel. Mr. Deaza-Alcala appears to raise four arguments in support of his contention that he was afforded inadequate assistance of counsel. First, he asserts that his counsel failed to require the United States to demonstrate the type and quantity of drugs involved in his offense. Petition at 4, 5; 24-27.[1] Second, he asserts that his counsel was ineffective because counsel failed to attack the indictment and sentence by pointing to the Government's alleged failure to "what substance containing 'bath salt[]s that allege similar effects to others methamphetamine, coca leave, heroin, coca other controlled substance . . . ." Petition at 4; 18-24. Third, he argues that counsel failed to argue for a downward variance under 18 U.S.C. § 3553(a). *Id.* at 31-32. Fourth, he asserts in a conclusory manner that his counsel "did not advise[] of his right appeal [sic]." Petition at 8.

The United States filed an opposition (the "Opposition") to the Petition on October 25, 2018. Dkt. No. 434. The United States argues that Mr. Deaza-Alcala's petition lacks merit and that it should be denied without an evidentiary hearing. Mr. Deaza-Alcala filed his reply on November 11, 2019. The reply principally argues that the Government's Opposition should be disregarded because it was untimely. The Opposition was filed twelve days after the original deadline established

---

[1] Page references within the Petition are to the ECF page numbers because of inconsistencies in the internal pagination of the Petition.

5

by the Court. However, the Court extended the deadline for the Government's submission on October 18, 2018. Dkt. No. 433. And the Opposition was filed by the extended deadline. Mr. Deaza-Alcala is not substantially prejudiced by the fact that the United States filed its Opposition twelve days after the initial deadline. Therefore, the Court will consider the Opposition here.

### III. LEGAL STANDARD

To show that his sentence is invalid, under 28 U.S.C. § 2255 the petitioner must establish "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To prevail on a § 2255 petition, the petitioner must demonstrate "constitutional error . . . or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). The Court must hold an evidentiary hearing under § 2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "It is within the district court's discretion to determine whether a hearing is warranted." *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003).

Mr. Deaza-Alcala is proceeding *pro se* in this case. As a result, his submissions are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). In reviewing Mr. Deaza-Alcala's submissions, the Court must liberally construe the petitioner's submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

### IV. **APPLICATION**

Mr. Deaza-Alcala's petition does not support the conclusion that his counsel's representation fell below an objective standard of reasonableness, or that he was prejudiced as a result. It is well established that the Sixth Amendment to the United States Constitution guarantees criminal defendants' right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland v. Washington*, the Supreme Court set forth the familiar two-part test for determining whether an attorney's representation was ineffective. 466 U.S. 668 (1984). First, the defendant must demonstrate that the representation "fell below an objective standard of reasonableness." *Id.* at 688. Second, the defendant must demonstrate that the deficient representation prejudiced the defendant. *Id.* at 694.

With respect to the first prong of the *Strickland* test, to prevail a petitioner must demonstrate that the attorney "made errors so serious" that the representation fell below an "objective standard of reasonableness." *Id.* at 687-88. To assess counsel's performance in this context, "[t]he court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 589)).

The Supreme Court has described the second, or "prejudice" requirement of the *Strickland* test as follows:

> in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.
>
> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the

7

> determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill v. Lockhart*, 474 U.S. 52, 59–60, 106 S. Ct. 366, 370–71, 88 L. Ed. 2d 203 (1985).

Viewed against this standard, it is clear from the records of this case that Mr. Deaza-Alcala's petition lacks merit. Each of his claims founder on one or both of the tests established in *Strickland*.

Mr. Deaza-Alcala's first two arguments are undermined by his plea agreement and his own guilty plea allocution. Mr. Deaza-Alcala argues that his counsel was inefficient because he failed to require testing of the nature and quantity of the narcotics at issue, and because he did not challenge the indictment for failing to identify the "bath salts" associated with the crime of conviction. However, Mr. Deaza-Alcala clearly accepted responsibility for the distribution of heroin. In his plea agreement, he agreed that he conspired to sell heroin. He also agreed that the quantity of heroin involved was at least 90 kilograms. Plea Agreement at 2. As described above, Mr. Deaza-Alcala stated under oath that he had distributed at least one kilogram of heroin during his plea allocution. In light of those facts, the performance by Mr. Deaza-Alcala's counsel did not fall below an objective standard of reasonableness, and, in any event did not result in prejudice to Mr. Deaza-Alcala.[2]

The argument that Mr. Deaza-Alcala's counsel was ineffective due to his asserted failure to argue for a variance under 18 U.S.C. § 3553(a) falls flat on the facts. As described above, Mr. Deaza-Alcala's counsel expressly argued for a variance under § 3553(a). Sentencing Transcript at 10.

---

[2] The United States suggests that one argument that could be suggested by Mr. Deaza-Alcala's motion is that his counsel was ineffective due to his asserted "failure to argue that the defendant was not subject to a ten-year mandatory minimum sentence as a result of the quantity of narcotics that he trafficked." Opposition at 1. To the extent that Mr. Deaza-Alcala's Petition can be read to raise such an argument, it founders for the same reasons as the arguments described here: Mr. Deaza-Alcala expressly accepted responsibility for a quantity of heroin sufficient to trigger the mandatory minimum sentence. And in his Plea Agreement, and the related plea colloquy, Mr. Deaza-Alcala acknowledged the applicability of the mandatory minimum sentence. *See* Plea Agreement at 1, 3; Plea Transcript at 15.

He argued that a variance was warranted as a result of the defendant's culpability relative to that of other conspirators. *Id.* at 10-11. And the Court accepted his argument in part when it imposed a sentence substantially below the applicable sentencing guidelines range. *Id.* at 26-27; 30. So, Mr. Deaza-Alcala's counsel did not fail to argue for a variance, and, as a result, his conduct easily fell within the reasonable standard of performance. And Mr. Deaza-Alcala was not prejudiced by his conduct. To the contrary, he benefited from a substantial downward variance imposed by the Court as a result of the Court's application of the sentencing factors described in 18 U.S.C. § 3553(a).

Mr. Deaza-Alcala's conclusory statement that his counsel "did not advise[] of his right appeal [sic]" on its own is insufficient to justify an evidentiary hearing. Petition at 8. Mr. Deaza-Alcala was apprised of his right to appeal his sentence, and the limitations on his right to appeal. In his Plea Agreement, Mr. Deaza-Alcala specifically waived a number of rights to appeal his sentence and conviction. In particular, he waived the right to appeal any sentence within or below the parties' stipulated guidelines range of 168 to 210 months imprisonment. Plea Agreement at 4. As noted above, Mr. Deaza-Alcala was sentenced at a point substantially below that agreed-upon range. Moreover, during his plea colloquy, the Court advised Mr. Deaza-Alcala regarding the existence of his right to appeal his conviction and sentence and the specific limitations on that right that he had agreed to in his Plea Agreement. Plea Transcript at 23-24. At the conclusion of sentencing, the Court expressly advised Mr. Deaza-Alcala of his right to appeal his conviction and sentence, the deadline to file a notice of appeal, and that the Clerk of Court would prepare and file a notice of appeal on his behalf. Sentencing Transcript at 33.

Given these facts, the Court does not believe that Mr. Deaza-Alcala has, in his single stray statement, presented an adequate justification for an evidentiary hearing with respect to this issue. The Court expressly advised Mr. Deaza-Alcala of his right to appeal the sentence and the deadline to do so. Mr. Deaza-Alcala's submission does not suggest that his counsel failed to file a notice of

9

appeal on his behalf following a request that he do so. Nor does he suggest that he "reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Moreover, Mr. Deaza-Alcala's submission does not suggest any reason why counsel might think that Mr. Deaza-Alcala's sentence was one to which a rational defendant would want to appeal, given that the Court calculated the advisory sentencing guidelines in the manner agreed to by the defendant, and sentenced the defendant to the mandatory minimum sentence—well below the stipulated guidelines range to which he had agreed.[3]

The conduct of Mr. Deaza-Alcala's counsel did not fall below an objective standard of reasonableness, and Mr. Deaza-Alcala was not prejudiced by his counsel's actions. Therefore, Mr. Deaza-Alcala's claim that his counsel was constitutionally ineffective lacks merit. This conclusion is clear from a review of Mr. Deaza-Alcala's motion and the records and files of the case. As a result, no evidentiary hearing is warranted.

In a proceeding under 28 U.S.C. § 2255, "the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Federal Rule of Appellate Procedure 22(b)(1). To obtain a certificate of appealability under §2253(c), the applicant "must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks and citation omitted). The Court does not find that standard to be met in this case. Accordingly, a certificate of appealability pursuant to 28 U.S.C. § 2253(c) is DENIED.

---

[3] *See Flores-Ortega*, 528 U.S. at 480; *see also Paddin v. U.S.*, 521 Fed.Appx. 36, 38 (2013) ("Here, Padin entered a guilty plea, he received a sentence at the low end of the Guidelines range he agreed to, and he waived his right to appeal a sentence within or below that range. Accordingly, we conclude that the district court did not err in holding[, without conducting an evidentiary hearing,] that defense counsel did not render constitutionally defective assistance by failing to file a notice of appeal.")

**V.     CONCLUSION**

For the reasons stated above, Mr. Deaza-Alcala's petition is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 425 in 1:15-cr-321 and to terminate all pending motions in 1:18-cv-7285-GHW and to close that case.

SO ORDERED.

Dated: May 21, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge